**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ADAMA SOW, DAVID JAKLEVIC, ALEXANDRA DE MUCHA PINO, OSCAR RIOS, BARBARA ROSS, MATTHEW BREDDER, SABRINA ZURKUHLEN, MARIA SALAZAR, DARA PLUCHINO, and SAVITRI DURKEE, on behalf of themselves and others similarly situated,

Plaintiffs,

- against -

CITY OF NEW YORK; MAYOR BILL DE BLASIO; NEW YORK CITY POLICE DEPARTMENT COMMISSIONER DERMOT SHEA; NEW YORK CITY POLICE DEPARTMENT CHIEF OF DEPARTMENT TERENCE MONAHAN; NYPD DETECTIVE EDWARD CARRASCO (SHIELD NO. 1567); NYPD OFFICER TALHA AHMAD (SHIELD NO. 21358); NYPD OFFICER KEVIN AGRO (SHIELD NO. 8054); and NYPD OFFICERS JOHN and JANE DOES # 1- 40,

Defendants.

21-CV-533 (CM) (GWG)

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT, CERTIFICATION OF CLASS AND APPOINTMENT OF CLASS COUNSEL FOR SETTLEMENT PURPOSES, APPROVAL OF PROPOSED CLASS NOTICE AND ADMINISTRATION PROCESS, AND APPOINTMENT OF CLAIMS ADMINISTRATOR**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.......................................................... 2

    I.     The Sow Action ................................................................................................ 2

    II.    Investigation, Discovery, and Settlement Negotiations........................................ 2

SUMMARY OF PRINCIPLE SETTLEMENT TERMS .............................................. 3

    I.     Proposed Settlement Class Definition ................................................................. 3

    II.    Proposed Payments to Class Members ................................................................ 7

    III.   Proposed Process for Providing Notice to Class Members .................................. 8

    IV.   Attorneys' Fees and Costs ................................................................................. 8

THE COURT SHOULD PRELIMARILY APPROVE THE PROPOSED SETTLEMENT ......... 9

    I.     Continued Litigation Would Be Complex, Expensive, and Lengthy (Factor 1) ... 10

    II.    The Reaction of the Class to the Settlement (Factor 2)........................................ 11

    III.   Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Factor 3) ...................................................................................... 11

    IV.   Plaintiffs Would Face Real Risks if the Case Proceeded (Factors 4 and 5) .......... 12

    V.    Maintaining the Class Through Trial Would Not Be Simple (Factor 6) ............... 13

    VI.   Defendants Could Conceivably Withstand a Greater Judgment, But This Fact Alone Does Not Weigh Against Approval (Factor 7) ........................................... 14

    VII.  The Settlement Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Factors 8 and 9) ............................................ 14

THE COURT SHOULD CONDITIONALLY CERTIFY THE PROPOSED CLASS PURSUANT TO RULE 23(E)........................................................................................ 15

    I.     The Proposed Class Satisfies the Rule 23(a) Factors............................................ 15

           A.    Numerosity................................................................................. 16

           B.    Commonality............................................................................... 16

           C.    Typicality ................................................................................... 17

           D.    Adequacy of the Class Representatives ...................................... 17

    II.    The Proposed Class Satisfies the Rule 23(b)(3) Factors....................................... 18

PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL ..................... 19

THE PROPOSED PROCESS FOR NOTIFYING THE CLASS, RECEIVING CLAIM FORMS, AND DISTRIBUTING PAYMENTS TO ELIGIBLE CLASS MEMBERS IS FAIR AND REASONABLE .................................................................................................................. 21

THE PROPOSED CLAIMS ADMINISTRATOR IS ADEQUATE........................................... 23

CONCLUSION.................................................................................................................... 23

# TABLE OF AUTHORITIES

## CASES

*Alford v. City of New York*, No. 06-CV-2512 (S.D.N.Y.) ............................................................ 21

*Black Lives Matter Los Angeles v. City of Los Angeles*, No. 20-CV-5027 (C.D. Cal. Oct. 3, 2022) ..................................................................................................................................... 17

*Brown v. Kelly*, 244 F.R.D. 222 (S.D.N.Y. 2007) .................................................................... 16

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ................................................ 10

*Clark v. Ecolab Inc.*, Nos. 07-CV-8623, 04-CV-4488, 06-CV-5672, 2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ....................................................................................................... 9

*Cordero v. World Food Prize*, No. 17-CV-347 (S.D. Iowa) ....................................................... 21

*Cordes & Co. Fin. Serv., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91 (2d Cir. 2007) .......... 18

*County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1422 (E.D.N.Y. 1989) ................. 15

*Daniels v City of New York*, 198 F.R.D. 409 (S.D.N.Y. 2001) .................................................. 20

*Edrei v. Bratton*, No.16-CV-1652 (S.D.N.Y.) ........................................................................ 20

*Edrei v. Maguire*, 892 F.3d 525 (2d Cir. 2018) ..................................................................... 20

*El Sayed v City of New York*, No. 18-CV-10566 (S.D.N.Y.) ..................................................... 20

*Felix v. Northstar Location Servs., LLC*, 290 F.R.D. 397 (W.D.N.Y. 2013) ............................... 9

*Floyd v City of New York*, No. 08-CV-1034 (S.D.N.Y.) ........................................................... 20

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 184 (W.D.N.Y. 2005) .............................................. 14

*Gerskovich v. Iocco, City of New York*, No. 15-CV-7280 (S.D.N.Y.) ........................................ 21

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000).. 10, 12, 14

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29 (2d Cir.2009) ................................. 17

*In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57 (S.D.N.Y. 1993) ............................. 22

*In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493 (S.D.N.Y. 1996) ...................... 19

*In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997) .................................. 13

*In re Traffic Exec. Ass'n-E. R.Rs.*, 627 F.2d 631 (2d Cir. 1980) ............................................... 9

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ...................................... 12

*In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267 (S.D.N.Y. 2003) ......................................... 16

*Joel A. v. Giuliani*, 218 F.3d 132 (2d Cir. 2000) .................................................................... 15

*Jones v. United States Postal Service*, No. 20-CV-6516 (S.D.N.Y.) ......................................... 20

*Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169 (S.D.N.Y. 2014) ................................................ 9

*Lomax v. O'Ree*, No. 24-C-16-2313 (Circuit Court, Baltimore City) ........................................ 21

*MacNamara v. City of New York*, 275 F.R.D. 125 (S.D.N.Y. 2011) ..................................... passim

*Maguire v. Edrei*, 139 S. Ct. 2614 (2019) .............................................................. 20

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) .................................................. 15

*Martens v. Smith Barney, Inc.*, 181 F.R.D. 243 (S.D.N.Y. 1998) .............................. 12

*Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072 (2d Cir. 1995) ................. 9

*McBean v. City of New York*, 233 F.R.D. 377 (S.D.N.Y. 2006) ................................. 14

*McLennon v City of New York*, No. 14-CV-6320 (E.D.N.Y. 2014) ............................ 20

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972) ......................................................... 14

*Nigro v. City of New York*, No. 19-CV-2369 (S.D.N.Y.) ........................................... 21

*Packard v. City of New York*, No. 15-CV-7130 (S.D.N.Y.) ....................................... 21

*Peat v. City of New York*, No. 12-CV-8230 (S.D.N.Y.) ............................................. 21

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26 (E.D.N.Y. 2006) ................. 15

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ...................................................... 17

*Samira Sierra, et al. v. City of New York*, et al., Nos. 20-CV-10291, 20-CV-10541 (CM) (GWG) ............................................................................................................. 8

*Stinson, et al. v. City of New York*, No. 10-CV-4228 (S.D.N.Y) (RWS) .................... 23

*Syed v City of New York*, No. 16-CV-04789 (S.D.N.Y. 2016) .................................... 20

*Velez v. Majik Cleaning Serv., Inc.*, No. 03-CV-8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007) ............................................................................................................. 13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ................. 9, 16

*Yang v. Kosinski*, 960 F.3d 119 (2d Cir. 2020) ......................................................... 20

*Yang v. N.Y. State Bd. Of Elections*, No. 20-CV-3325 (S.D.N.Y.) ........................... 20

**STATUTES**

Fed. R. Civ. P. 23(a) ............................................................................................. 15, 16

Fed. R. Civ. P. 23(b)(2) ............................................................................................. 16

Fed. R. Civ. P. 23(b)(3) ............................................................................................. 18

Fed. R. Civ. P. 23(g)(1)(A) ........................................................................................ 19

Fed. R. Civ. P. 23(g)(1)(B) ........................................................................................ 19

**TREATISES**

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ................................ 15

## INTRODUCTION

After years of hard-fought litigation, the Named Plaintiffs,[1] individually and on behalf of the class they seek to represent (collectively "Plaintiffs"), and the City of New York and the individual NYPD Defendants (collectively "Defendants") have reached a settlement agreement in this putative class action that will compensate approximately 1,380 people who were arrested, and/or subjected to force by NYPD officers during the "George Floyd protests" at several locations throughout the City. The Settlement Agreement reached by the parties ("Agr.") is attached as Exhibit 1 to the Declaration of Jonathan C. Moore ("Moore Decl.").

Specifically, Defendants will pay each eligible class member $9,950.00 (Nine Thousand Nine Hundred and Fifty Dollars) with a maximum distribution to class members from a class fund of $13,731,000.00 (Thirteen Million Seven Hundred and Thirty-One Thousand Dollars). An additional service award will be paid to the Named Plaintiffs in this action who were arrested and/or force was used against at several "George Floyd protests" in 2020, and a settlement will be paid to those Named Plaintiffs arrested at Mott Haven on June 4, 2020. These amounts are exclusive of attorney's fees and costs which the parties have agreed to negotiate and, hopefully resolve, separately without the need for court intervention.

Because this proposed settlement satisfies all of the criteria for preliminary approval, Plaintiffs respectfully request that the Court: (1) preliminarily approve the proposed settlement terms as reflected in the parties' Stipulation of Settlement and Order (referred to herein as "Settlement Agreement" or "Agreement"); (2) conditionally certify the proposed class for settlement purposes pursuant to Fed. R. Civ. P. 23(c) and 23(e); (3) appoint Beldock Levine &

---

[1] The Named Plaintiffs are Adama Sow, David Jaklevic, Alexandra De Mucha Pino, Oscar Rios, Barbara Ross, Matthew Bredder, Sabrina Zurkuhlen, Maria Salazar, Dara Pluchino, and Savitri Durkee.

Hoffman, LLP, Cohen & Green, PLLC, Wylie Stecklow, PLLC, Masai Lord, and Gideon Orion Oliver, Esq. (collectively, "Plaintiffs' Counsel") as Class Counsel; (4) approve the proposed class settlement notice procedure as reflected in the Agreement; and (5) appoint Rust Consulting, Inc. as Class Administrator.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. THE SOW ACTION

In the *Sow* action, Plaintiffs allege that the City of New York systematically attacked, trapped, and arrested people who were joining in protests condemning police violence in response to the gruesome murder of George Floyd. Plaintiffs allege that starting on May 28, 2020, and continuing through at least November 2020, Defendants assaulted protesters, bystanders, and observers with fist strikes, baton strikes to the head and body, tackles to the ground, and subjected them to excessively tight handcuffs (both metal and plastic flex-cuffs) and pepper spray.

Plaintiffs also allege that as a frequent prelude to these assaults, NYPD officers corralled Black Lives Matter ("BLM") protesters into spaces from which they could not escape—a practice known as "kettling"—engaging in making mass arrests, all without lawful justification or fair warning and subjected arrestees to lengthy and unnecessary arrest processing, and detained them in cruel and inhumane conditions. Videos produced during discovery show these practices as widespread and pervasive.

### II. INVESTIGATION, DISCOVERY, AND SETTLEMENT NEGOTIATIONS

The *Sow* Complaint was filed on January 21, 2021. For purposes of discovery, the Court eventually consolidated *Sow* with nine other related cases (the "Consolidated Cases"). Consistent with the Court's consolidation order, the plaintiffs in the Consolidated Cases coordinated and collaborated in taking discovery. Moore Decl. ¶¶ 3–6, 8, 10.

Given the breadth of the consolidated actions and the number of parties, discovery in the Consolidated Cases has been complex, lengthy, and hard-fought. To date, Defendants have produced hundreds of thousands of documents, and thousands of hours of videos and audio recordings which plaintiffs have categorized and logged. *Id*. ¶ 4. On March 6, 2021, the *Sow* Plaintiffs filed an Amended Complaint. ECF Dkt. No. 49. The *Sow* Plaintiffs were partially successful in defending a motion to dismiss that pleading. ECF Dkt. No. 116.

The *Sow* Named Plaintiffs responded to Defendants' discovery requests and were all deposed in 2021, and *Sow* Plaintiffs' Counsel participated in numerous depositions of NYPD officers and defendants. Moore Decl. ¶ 5. Plaintiffs' Counsel participated in discovery motion practice including filing numerous motions to compel discovery that were granted, and also responded to motions from Defendants and counsel for Intervenor Unions the PBA, DEA and SBA. The *Sow* counsel were actively preparing for depositions of high-level NYPD officials until the parties reached an agreement. *Id.* ¶ 8. The Court also scheduled motion practice on class certification which was being prepared by *Sow* Counsel until the parties reached a settlement agreement. *Id.* ¶ 9. The *Sow* counsel had digested hundreds of hours of video and many thousands of pages of documents produced by the City of New York during discovery. *Id.* ¶ 10.

The *Sow* Plaintiffs engaged in numerous settlement discussions over a number of months. These negotiations were hard fought and the proposed settlement amount for each class member reflects significant compromise on the part of both Plaintiffs and Defendants.

## SUMMARY OF PRINCIPLE SETTLEMENT TERMS

The Agreement provides significant compensation to approximately 1,380 protestors subjected to arrest and/or police force.

## I. PROPOSED SETTLEMENT CLASS DEFINITION

The proposed Settlement Class is defined as all persons who were arrested, and/or

subjected to force by NYPD officers during the "George Floyd protest" on the following 18 dates and locations:

| Protest Date | Protest Location | Location Boundaries |
|---|---|---|
| May 28, 2020 | Lafayette to City Hall | Arrests made at the protest within the area of Manhattan in the surrounding vicinity bordered by Spring Street, Centre Street, Park Row, Nassau Street, Broad Street, Beaver Street, Broadway, Battery Place, and West Street. |
| May 28, 2020 | Union Square | Arrests made at the protest within the area of Manhattan in the surrounding vicinity bordered by West and East 20th Street, Second Avenue, East and West 11th Street, and Seventh Avenue. |
| May 29, 2020 | Barclays Center area | Arrests made at the protest within the area of Brooklyn in the surrounding vicinity bordered by Myrtle Avenue, Classon Avenue, Fulton Street, Washington Avenue, Prospect Place, Vanderbilt Avenue, Sterling Place, Seventh Avenue, Union Street, Nevins Street, Atlantic Avenue, Bond Street and Butler Street and within the area of Manhattan in the surrounding vicinity bordered by Canal Street, Mulberry Street, Park Row, and Broadway. |
| May 30, 2020 | East Flatbush/ Barclays Center area | Arrests made at the protest within the area of Brooklyn in the surrounding vicinity bordered by Myrtle Avenue, Washington Avenue, Prospect Place, Vanderbilt Avenue, Sterling Place, Seventh Avenue, Union Street, Nevins Street, Atlantic Avenue, Baltic Street and Bond Street and Third Avenue; Winthrop Street, East 34th Street, Beverly Road, Ocean Avenue, Parkside Avenue and Flatbush Avenue; Fulton Street, Cadman Plaza West, Sands Street, and Flatbush Avenue Extension. |
| May 30, 2020 | Harlem/ West Side Highway | Arrests made at the protest within the area of Manhattan in the surrounding vicinity bordered by West 110th Street, the West Side Highway, West End Avenue, 11th Avenue, and West 42nd Street. |
| May 30, 2020 | Union Square to FDR Drive | Arrests made at the protest within the area of Manhattan in the surrounding vicinity bordered by East and West 17th Street, First Avenue, East 4th Street and Greenwich Street and Eighth Avenue; and the FDR |

| | | |
|---|---|---|
| | | Drive and contiguous streets between Pike Slip and East 116th Street. |
| May 30, 2020 | City Hall to over the Brooklyn Bridge | Arrests made at the protest within the area of Brooklyn in the surrounding vicinity bordered by Sands Street, Flatbush Avenue Extension, Fulton Street, and Cadman Plaza West; the Brooklyn Bridge and York Street; and within the area of Manhattan in the surrounding vicinity bordered by Park Row, Broadway, Reade Street, Centre Street, Pearl Street and Ann Street. |
| May 31, 2020 | Union Square | Arrests made at the protest within the area of Manhattan in the surrounding vicinity bordered by West and East 18th Street, Third Avenue, East and West Eighth Street, Greenwich Avenue, and Seventh Avenue. |
| June 1, 2020 | Barclays Center area | Arrests made at the protest within the area of Brooklyn in the surrounding vicinity bordered by Myrtle Avenue, Washington Avenue, Park Place, Vanderbilt Avenue, Sterling Place, Seventh Avenue, Union Street, Third Avenue, Atlantic Avenue, Bond Street, Fulton Street, Cadman Plaza West, Sands Street, and Gold Street; the Brooklyn Bridge; and within the area of Manhattan in the surrounding vicinity bordered by Park Row, Barclay Street, Hudson Street, Eighth Avenue, West 23rd Street, Tenth Avenue, West 35th Street, Ninth Avenue, West 59th Street, Sixth Avenue, Canal Street, and Mulberry Street. |
| June 1, 2020 | Midtown Manhattan | Arrests made at the protest within the area of Manhattan in the surrounding vicinity bordered by East 66th Street, Second Avenue, East and West 23rd Street, Sixth Avenue, Central Park South, and Fifth Avenue. |
| June 2, 2020 | Foley Square to Central Park | Arrests made at the protest within the area of Manhattan in the surrounding vicinity bordered by Bleecker Street, East 2nd Street, First Avenue, Allen Street, East Broadway, Park Row, Pearl Street, Lafayette Street, White Street, and Sixth Avenue; and Central Park North, Fifth Avenue, East 97th Street, Park Avenue, East 67th Street, Third Avenue, East 23rd Street, East 26th Street, Madison Avenue, East and West 35th Street, Ninth Avenue, West 59th Street, and Central Park West. |
| June 2, 2020 | Union Square and | Arrests made at the protest within the area of Manhattan in the surrounding vicinity bordered by West and East |

| | | |
|---|---|---|
| | Astor Place | 23rd Street, Second Avenue, East 3rd Street, Mercer Street, West 8th Street, University Place, East and West 11th Street, and Sixth Avenue. |
| June 2, 2020 | Near and on West Side Highway | Arrests made at the protest within the area of Manhattan in the surrounding vicinity bordered by Chambers Street, Greenwich Street, Battery Place and West Street. |
| June 2, 2020 | Chelsea | Arrests made at the protest within the area of Manhattan in the surrounding vicinity bordered by West 34th Street, Fifth Avenue, West 23rd Street, Seventh Avenue, West 14th Street, and Tenth Avenue. |
| June 3, 2020 | Cadman Plaza | Arrests made at the protest within the area of Manhattan in the surrounding vicinity bordered by Prospect Street / Cadman Plaza North, Cadman Plaza East, Red Cross Place, Brooklyn Bridge Boulevard, Tillary Street, Jay Street, Willoughby Street, Lawrence Street, Gallatin Place, Livingston Street, Clinton Street, Pierrepont Street, and Henry Street. |
| June 3, 2020 | Upper East Side | Arrests made at the protest within the area of Manhattan in the surrounding vicinity bordered by East 80th Street, First Avenue, East 49th Street, Sixth Avenue, West 58th Street, Seventh Avenue, Central Park South, and Fifth Avenue. |
| June 4, 2020 | McCarren Park | Arrests made at the protest within the area of Brooklyn in the surrounding vicinity bordered by Nassau Avenue, Lorimer Street, Driggs Ave, Manhattan Ave, Leonard Street, Richardson Street, Lorimer Street, Withers Street, Havemeyer Street, Metropolitan Avenue, Marcy Avenue, Broadway, Middleton Street, Wallabout Street, Kent Avenue, Williamsburg Street East, Bedford Avenue, Broadway, Kent Avenue, River Street, Grand Street, and Berry Street. |
| June 4, 2020 | Clinton Hill | Arrests made at the protest within the area of Brooklyn in the surrounding vicinity bordered by Flushing Avenue, Classon Avenue, Atlantic Avenue, 4th Ave, Pacific Street, Nevins Street, Flatbush Ave, Fort Greene Place, Dekalb Avenue, Washington Park, Myrtle Avenue, and Carlton Avenue. |

Excluded from the Class are individuals who have settled claims with New York City Comptroller's Office arising out of the events at the 18 protest dates and locations in the chart above. Also excluded are individuals who brought lawsuits against the City and/or individual members of NYPD arising out of the events at the 18 protest locations and whose claims were settled, dismissed, or otherwise disposed of. Further, excluded from this settlement are all persons charged with trespassing (New York State Penal Law ("NYS P.L.") § 140), destruction of public property (NYS P.L. § 145), assaulting an officer (NYS P.L. § 120.08), criminal possession of a weapon (NYS P.L. § 265), arson (NYS P.L. § 150), or burglary (NYS P.L. § 140) where the person was arrested at the location of the alleged burglary. Additionally, a potential class member will be excluded if there is video or other objective evidence of them clearly demonstrating that the claimant, through physical conduct, intentionally obstructed, impaired, or prevented a Member of Service's ability to lawfully arrest, or attempt to lawfully arrest another individual. Agr. ¶ 33.

## II.   PROPOSED PAYMENTS TO CLASS MEMBERS

Under the Agreement, all eligible class members who submit timely Claim Forms will each receive $9,950.00. Agr. ¶ 40. For their efforts in bringing and maintaining this action, including engaging in discovery and being deposed, and subject to Court approval, the City agrees to pay awards for the services provided to the class by Class Representatives David Jaklevic, Alexandra de Mucha Pino, Oscar Rios, Sabrina Zurkuhlen, Maria Salazar, and Matthew Bredder, in the amount of nine thousand nine hundred and fifty dollars ($9.950.00). In light of the unique facts and circumstances of her claims, the City agrees to pay to Barbara Ross a service award in the sum of twenty thousand and fifty dollars ($20,050.00). These service payment awards shall be in addition to any amounts otherwise due to them with respect to their individual claim as Class Members.

Subject to the Court's approval, the City agrees to pay Plaintiffs Adama Sow, Dara

Pluchino, and Savitri Durkee the sum of twenty-one thousand and five hundred dollars ($21,500.00), in full satisfaction and settlement of all claims in this Civil Action. In consideration for the settlement herein, Plaintiffs will not submit a claim form or in any way participate in the class action settlement under *Samira Sierra, et al. v. City of New York*, et al., Nos. 20-CV-10291, 20-CV-10541 (CM) (GWG).

## III. PROPOSED PROCESS FOR PROVIDING NOTICE TO CLASS MEMBERS

The parties have agreed to provide notice to the Class in three forms. First, a "Claims Package" will be mailed to every known Class Member. Agr. ¶ 36. The Claims Package consists of a long form Class Notice and a Claim Form. *Id*. ¶¶ 7, 9. As noted below, the Claims Administrator will translate the Claims Package into Spanish (which the parties will review for accuracy), and both the English and Spanish versions of the Claims Package will be transmitted together to each class member. *Id*. ¶ 50. Second, a Class Notice Summary will be published in *the Daily News, the Amsterdam News, and El Diario*. *Id*. ¶ 37. Third, a website will be established where Class Members can review the terms of the proposed Settlement, and submit a Claim Form. *Id.* ¶ 38.

## IV. ATTORNEYS' FEES AND COSTS

The City will pay Plaintiffs' reasonable attorneys' fees and costs. Agr. ¶ 83. The parties agree that they will attempt to settle the amount of fees and costs incurred up to and including the date of the Agreement and for those fees and costs that are reasonably likely to be incurred through the date of the Final Approval hearing; Plaintiffs will move this Court for approval of their attorneys' fees and costs, pursuant to Federal Rule of Civil Procedure 23(h) and 54(d)(1) and (2), simultaneously with their Motion for Final Approval of the Settlement. Plaintiffs intend to seek approximately $8,284,543.17 for reasonable attorneys' fees and costs incurred through June 15, 2023, plus all additional reasonable fees and costs incurred from that date through the completion

of this settlement.

## THE COURT SHOULD PRELIMARILY APPROVE THE PROPOSED SETTLEMENT

Preliminary approval of this settlement is appropriate, especially given the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). Approval of a class action settlement is a matter of discretion, *see Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995), with "proper deference" given "to the private consensual decision of the parties," *Clark v. Ecolab Inc.*, Nos. 07-CV-8623, 04-CV-4488, 06-CV-5672, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (internal quotation marks and citations omitted). Courts considering a proposed class action settlement "should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." *Id.*

Preliminary approval of a proposed class settlement "requires only an initial evaluation of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties." *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014). Granting preliminary approval is "at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n-E. R.Rs.*, 627 F.2d 631, 634 (2d Cir. 1980). "A proposed settlement of a class action should therefore be preliminarily approved where it appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Felix v. Northstar Location Servs., LLC*, 290 F.R.D. 397, 407 (W.D.N.Y. 2013) (internal quotation marks omitted).

The proposed settlement here is fair, reasonable, and adequate and should be preliminarily

approved. In evaluating the fairness of a proposed class action settlement, courts in the Second

Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d

448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc*., 209

F.3d 43 (2d Cir. 2000).  The *Grinnell* factors are:

> (1)  the complexity, expense, and likely duration of the litigation;
>
> (2)  the reaction of the class to the settlement;
>
> (3)  the stage of the proceedings and the amount of discovery completed;
>
> (4)  the risks of establishing liability;
>
> (5)  the risks of establishing damages;
>
> (6)  the risks of maintaining the class action through the trial;
>
> (7)  the ability of the defendants to withstand a greater judgment;
>
> (8)  the range of reasonableness of the settlement fund in light of the best possible recovery; and
>
> (9)  the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463.  These factors all weigh in favor of the granting preliminary approval

to the Agreement.

## I.    CONTINUED LITIGATION WOULD BE COMPLEX, EXPENSIVE, AND LENGTHY (FACTOR 1)

By reaching a favorable settlement prior to the completion of discovery, dispositive

motions and/or trial, Plaintiffs seek to avoid additional significant expense and delay and ensure

recovery for the class.  "Most class actions are inherently complex and settlement avoids the costs,

delays and multitude of other problems associated with them."  *In re Austrian & German Bank

Holocaust Litig*., 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche

Bank*, 236 F.3d 78 (2d Cir. 2001).

There is no question that litigating this case through trial would be complicated and time-

consuming. Completing discovery for this case would require the *Sow* Plaintiffs to take additional depositions of high-level NYPD officials, and engage in expert discovery. Preparing for and taking those depositions would require hundreds of hours of attorney time. There is also additional paper discovery that would need to be completed if this case is not resolved by settlement.

Absent settlement, Plaintiffs would also need to litigate the issue of class certification and, most likely, prepare for and defend against summary judgment motions on a significant number of claims or elements of claims. Thus, by settling now, the Parties avoid protracted motion practice and save the Court the task of reviewing and deciding these sequential motions. Moreover, given that it is highly unlikely that this case could be fully resolved through summary judgment, a full jury trial would be necessary—which would be another burden on the Court and the Parties that settlement avoids.

Settlement avoids the time and costs of numerous additional depositions, further paper discovery, disputed motions for class certification and summary judgment, and trial. Significantly, it also avoids years of delay in obtaining compensation for class members. Thus, the first *Grinnell* factor weighs strongly in favor of approval.

## II.     THE REACTION OF THE CLASS TO THE SETTLEMENT (FACTOR 2)

Because notice of the settlement has not yet been issued to the class, the Court can and should more fully consider this factor after notice is sent and class members are given the opportunity to respond to it. Still, at this stage, the ten Named Plaintiffs have all expressed their approval of the settlement and, given the size of the awards, there is likely to be a positive reaction from the class. This factor, too, weighs in favor of approval.

## III.    DISCOVERY HAS ADVANCED FAR ENOUGH TO ALLOW THE PARTIES TO RESOLVE THE CASE RESPONSIBLY (FACTOR 3)

The parties have completed enough discovery to recommend settlement. "Because much

of the point of settling is to avoid litigation expenses such as full discovery, it would be inconsistent with the salutary purposes of settlement to find that extensive pre-trial discovery is a prerequisite to approval of a settlement." *Martens v. Smith Barney, Inc*., 181 F.R.D. 243, 263 (S.D.N.Y. 1998) (internal quotation marks and citations omitted). The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 537 (3d Cir. 2004) (internal quotation marks omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (internal quotation marks and citation omitted).

Discovery to date easily meets this standard. This Court is fully aware of how hard-fought discovery has been to date, with dozens of discovery disputes coming before the Court for resolution. Plaintiffs' Counsel have reviewed and analyzed many thousands of documents, reviewed hundreds of hours of video and audio recordings (including CCRB and NYC Department of Investigation interviews of many officers), defended the Named Plaintiffs' depositions, and taken or sat in on numerous depositions of NYPD personnel. Plaintiffs also obtained subpoenaed records from the Bronx District Attorney's Office.

After reviewing some of this discovery, Plaintiffs' counsel in *Sow* prepared an amended complaint that identified additional appropriate defendants and modified claims against defendants initially named.

This case has been litigated at an expedited pace for more than two years—more than enough time for the parties to responsibly resolve the case. This factor weighs in favor of approval.

## IV.  PLAINTIFFS WOULD FACE REAL RISKS IF THE CASE PROCEEDED (FACTORS 4 AND 5)

Plaintiffs believe their case is strong. But considerable risks remain if the case does not

settle. "Litigation inherently involves risks." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). "The proposed settlement benefits each plaintiff in that he or she will recover a monetary award immediately, without having to risk that an outcome unfavorable to the plaintiffs will emerge from a trial." *Velez v. Majik Cleaning Serv., Inc.*, No. 03-CV-8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007).

A trial on the merits would involve significant risks for Plaintiffs as to both liability and damages. To prevail on some of their constitutional claims, Plaintiffs would need to prove that they were singled out for police mistreatment on the basis of their message (against police brutality). They would also need to overcome Defendants' insistence that probable cause—and, with respect to the individual Defendants' qualified immunity defense, arguable probable cause— existed to arrest the protestors. Plaintiffs would also have to prove that the use of force against the protestors was objectively unreasonable, not to mention the other Class Claims—like the violation of protestors' First Amendment Rights. Plaintiffs also would need to show that each of the named Defendants was personally involved in the alleged constitutional deprivations and that the City was liable as a municipality.

Even if Plaintiffs succeeded at trial (and on appeal) in proving Defendants' liability, they would face additional difficulty in proving the full extent of damages. Given the generally relatively modest times in detention, Plaintiffs would face a substantial risk a jury would award less. These factors also weigh in favor of approval.

## V. MAINTAINING THE CLASS THROUGH TRIAL WOULD NOT BE SIMPLE (FACTOR 6)

While Plaintiffs are confident that they would obtain certification of the class under Rule 23, the many other litigations surrounding the Summer 2020 protests mean that maintaining the class through trial would be complicated, given other cases that could impinge upon the class.

Further, any trial would not occur for another year or more, further complicating efforts to maintain the class (as members may move away or become harder to find). Risk, expense, and delay permeate the class certification process. Settlement eliminates these risks, expenses, and delay. This factor favors preliminary approval.

## VI. DEFENDANTS COULD CONCEIVABLY WITHSTAND A GREATER JUDGMENT, BUT THIS FACT ALONE DOES NOT WEIGH AGAINST APPROVAL (FACTOR 7)

While the City of New York could presumably withstand a judgment greater than the total class settlement awards, that fact "does not render the settlement unfair, especially where the other *Grinnell* factors favor approval." *McBean v. City of New York*, 233 F.R.D. 377, 388 (S.D.N.Y. 2006). Indeed, "fairness does not require that the City of New York empty its coffers before this Court will approve a settlement." *Id*.

## VII. THE SETTLEMENT IS SUBSTANTIAL, EVEN IN LIGHT OF THE BEST POSSIBLE RECOVERY AND THE ATTENDANT RISKS OF LITIGATION (FACTORS 8 AND 9)

The City has agreed to pay a significant sum to each eligible class member: $9,950.00. This represents a substantial per-plaintiff settlement amount for a case like this, involving mass arrests and excessive force, among other things.

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank v. Eastman Kodak Co.*, 228 F.R.D. 184, 186 (W.D.N.Y. 2005) (quoting *In re Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id*. (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). Because the settlement agreement is, on its face, "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d

132, 138–39 (2d Cir. 2000)), the Court should grant preliminary approval.

## THE COURT SHOULD CONDITIONALLY CERTIFY THE PROPOSED CLASS PURSUANT TO RULE 23(E)

Plaintiffs respectfully request that the Court certify the Proposed Class under Federal Rule of Civil Procedure 23(e) for purposes of effectuating the settlement. As discussed below, the Class meets all of the requirements for class certification, and Defendants do not oppose certification under Rule 23(e). *See* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 13:3 ("If a class has not yet been certified, the parties stipulate to the conditional or temporary establishment of settlement classes for the purposes of the agreement."); *County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("negotiat[ing] a proposed settlement . . . prior to certification of the class" is appropriate), *aff'd in part, rev'd in part on other grounds*, 907 F.2d 1295 (2d Cir. 1990).

Under Rule 23(a), a class action may be maintained if all the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

## I.     THE PROPOSED CLASS SATISFIES THE RULE 23(A) FACTORS

The Proposed Class is, subject to the exclusion listed above,  all persons who were arrested, and/or subjected to force by NYPD officers during the "George Floyd protest" at the 18 dates and locations listed in the Chart at pages 4–6 above.

This motion satisfies the Rule 23(a) requirements.  The class is sufficiently numerous; questions of law and fact are common to the class; the class representatives' claims are typical of those of the class; and there is adequacy of representation.  Fed. R. Civ. P. 23(a).

Pursuant to the Agreement Plaintiffs will dismiss the remaining claims with prejudice, including any claims for injunctive relief sought through Fed. R. Civ. P. 23(b)(2). Agr. ¶ 85–86. However, Plaintiffs' Counsel was substantively involved in the framework being used in further settlement discussions that, if successful, will greatly benefit this class as well.

## A.     Numerosity

The Proposed Class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). "[T]he numerosity analysis begins with the presumption that a class comprising 40 or more members is generally sufficient." *MacNamara v. City of New York*, 275 F.R.D. 125, 141 (S.D.N.Y. 2011). Here, there are approximately 1,380 class members. Agr. ¶ 40. And while some class members may have a separate lawsuit pending, "the presence of those actions does not militate against class certification," *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 305 (S.D.N.Y. 2003), because, for purposes of the Rule 23 analysis, "individuals are considered class members until they opt out of the suit," *MacNamara*, 275 F.R.D. at 141. Accordingly, the Proposed Class is sufficiently numerous to satisfy Rule 23(a).

## B.     Commonality

Fed. R. Civ. P. 23(a)(2) requires "questions of law and fact common to the class." Even a "single common question" will suffice. *Wal-Mart*, 564 U.S. at 359 (cleaned up). The rule "does not require all questions of law or fact be common to the class," and, indeed, such a requirement "would be the death knell for class actions challenging the systemic enforcement of an [unlawful] statute," an "unacceptable result." *Brown v. Kelly*, 244 F.R.D. 222, 230–31 (S.D.N.Y. 2007), *affirmed in part and vacated in part on other grounds*, 609 F.3d 467 (2d Cir. 2010).

There are numerous factual and legal issues common to the class. Most centrally, the case is about the NYPD's response to specific protests on specific dates in specific neighborhoods at which all class members were present and experienced the same or similar conduct. In

*MacNamara*, this court certified subclasses of arrestees from the Republican National Convention protests under markedly similar circumstances. The court found that the commonality requirement was met because the mass arrests of protestors presented common questions of fact and law, including, whether officers arrested protestors without probable cause, whether officers issued dispersal orders and provided an opportunity to disperse, and whether officers acted pursuant to an unlawful policy or practice of indiscriminate mass arrest. *MacNamara*, 275 F.R.D. at 143; *see also Black Lives Matter Los Angeles v. City of Los Angeles*, No. 20-CV-5027, Dkt. # 174 (C.D. Cal. Oct. 3, 2022) (certifying class of protestors subjected to mass arrest during first week of Black Lives Matter protests).

## C. Typicality

The Named Plaintiffs' experiences and claims are typical of those in the class. Here, "each class member's claim arises from the same course of events"—their arrest, or experience of police force at the Settlement Locations "and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir.2009). "[T]he same unlawful conduct was directed at or affected both the named plaintiff[s] and the class sought to be represented." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993). Specifically, each Named Plaintiff, and the class members, were subjected to a coordinated police action. The Class Representatives claims arise from the same factual and legal circumstances that form the bases of the Fed. R. Civ. P. 23 Class Members' claims.

## D. Adequacy of the Class Representatives

The Named Plaintiffs have no interests that are "antagonistic to those of the []class members," and "there is no dispute that if the named Plaintiffs prevail, the putative class members will also benefit, since all were subject to the same allegedly unconstitutional course of conduct." *MacNamara*, 275 F.R.D. at 144. Accordingly, the Named Plaintiffs—most of whom were present

at the 18 locations listed above, marched peacefully, were subjected to the use of force and arrested, were placed in tight flexicuffs, and were given summonses or desk appearance tickets— are adequate representatives of the proposed class.

## II.   THE PROPOSED CLASS SATISFIES THE RULE 23(B)(3) FACTORS

In addition to satisfying the Fed. R. Civ. P. 23(a) factors, the Proposed Class meets the more stringent requirements necessary to certify a damages class under Rule 23(b)(3), which requires that common questions of law or fact "predominate" over individual matters, and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

First, Plaintiffs can demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Serv., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107–08 (2d Cir. 2007). Like the certified mass arrest subclasses in *MacNamara*, common issues predominate over individual ones in this case, where hundreds of people were arrested at a single location under a single plan orchestrated by Defendants. Because the Proposed Class comprises "individuals who were arrested as part of a group based on the alleged conduct of the group," and not their individual actions, the Court can find predominance. *MacNamara*, 275 F.R.D. at 146. Further, while "assessment of damages may ultimately require individualized inquiries, that possibility is no bar to class certification here." *Id.* "[F]actors relevant to the superiority analysis include: the interest of class members in controlling separate actions; the extent and nature of existing litigation concerning the controversy; the desirability or undesirability of concentrating litigation of the class claims in the particular forum; and the likely difficulties in managing a class action." *Id.* at 148. A class action is certainly the most fair and efficient way of resolving this case. Almost three years have passed since these protests, and the

vast majority of the putative class members have not filed separate actions. In addition, "the likely difficulties in managing a class action" are not greater here – particularly where Plaintiffs seek certification under Rule 23(e) as part of a proposed money-damages class settlement – than the difficulties of continuing to litigate as one of the Consolidated Cases, which have presented their own management difficulties.

Indeed, whatever "'management difficulties' that might accompany the proposed certification are certainly no greater than the management difficulties that would inevitably result from hundreds of separate trials." *Id.* "Given the number of class members injured" by the NYPD's alleged conduct, "a class action is not only the most efficient and convenient method to resolve this controversy, it is the only 'fair' and 'efficient' means to adjudicate this controversy." *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 527 (S.D.N.Y. 1996).

## PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Plaintiffs' Counsel are appropriate Class Counsel under Rule 23(g), which sets forth the four criteria for appointing class counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action"; (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"; (3) "counsel's knowledge of the applicable law"; and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the class. Fed. R. Civ. P. 23(g)(1)(B).

Plaintiffs' Counsel have successfully and efficiently worked together on this case for the last two and a half years. Moore Decl. ¶ 14. Plaintiffs' counsel are highly experienced in complex class actions and have prosecuted numerous class actions. *Id.* ¶¶ 15–20. Beldock Levine & Hoffman, LLP ("BLH") attorneys have litigated a number of class action lawsuits against the City of New York, including, but not limited to: *El Sayed v City of New York*, No. 18-CV-10566

(S.D.N.Y.) (injunctive claims, including a revised Patrol Guide policy, resolved on June 11, 2021); *Syed v City of New York*, No. 16-CV-04789 (S.D.N.Y. 2016) (class certified on February 15, 2019); *McLennon v City of New York*, No. 14-CV-6320 (E.D.N.Y. 2014) (injunctive claims resolved on March 3, 2020); *Floyd v City of New York*, No. 08-CV-1034 (S.D.N.Y.) (currently in remedial stage); *Daniels v City of New York*, 198 F.R.D. 409, 418 (S.D.N.Y. 2001) ("Aided by the capable hands of Jonathan C. Moore . . . , class counsel is undoubtedly qualified and experienced to conduct this litigation"); *MacNamara*, 275 F.R.D. at 154 (S.D.N.Y. 2011). Moore Decl. ¶ 16. Attorneys at BLH have litigated hundreds of civil rights claims against the City of New York, many of which pertained to the NYPD's policies and practices and have a breadth of knowledge of the NYPD issuing summons in an allegedly unlawful pattern that is demonstrative of racially biased enforcement.

Cohen and Green, PLLC, ("C&G") attorneys have litigated a number of class actions and police suits, including, but not limited to: *Jones v. United States Postal Service*, No. 20-CV-6516 (S.D.N.Y.) (nationwide voting rights class action); *Edrei v. Bratton*, No.16-CV-1652 (S.D.N.Y.), *aff'd sub. nom. Edrei v. Maguire*, 892 F.3d 525 (2d Cir. 2018) (landmark, precedential decision in challenge to the NYPD's use of Long Range Acoustic Device ("LRAD") against BLM protesters), *cert. denied Maguire v. Edrei*, 139 S. Ct. 2614 (2019) (with Oliver); *Gallagher v. N.Y. State. Bd. Of Elections*, No. 20-CV-5504 (S.D.N.Y.) (New York State voting rights class action); *see also Yang v. N.Y. State Bd. Of Elections*, No. 20-CV-3325 (S.D.N.Y.), *aff'd sub. Nom. Yang v. Kosinski*, 960 F.3d 119 (2d Cir. 2020). Moore Decl. ¶ 18.

Gideon Orion Oliver has over 18 years of experience litigating civil rights cases against the NYPD, including hundreds of cases challenging the City's policies, practices, and customs related to protest policing. *Sow* FAC ¶ 460. Oliver has frequently co-counseled with BLH

attorneys and C&G attorneys in litigation. *Id.* For example, in addition to litigating other 2004 RNC-related cases, Oliver was Of Counsel to BLH attorneys at the summary judgment briefing stage of the *MacNamara* RNC 2004 class action litigation. *Id.* Oliver has always maintained a portfolio including at least dozens of Plaintiffs' protest-policing related cases. One such recent case was *Edrei* (with C&G). Moore Decl. ¶ 19.

Wylie M. Stecklow has extensive experience litigating civil rights both in New York and elsewhere including Baltimore, Maryland: *Lomax v. O'Ree*, No. 24-C-16-2313 (Circuit Court, Baltimore City) and Iowa: *Cordero v. World Food Prize*, No. 17-CV-347 (S.D. Iowa). Stecklow has been litigating NYPD policies and practices for fifteen (15) years, including, but not limited to: *Alford v. City of New York*, No. 06-CV-2512 (S.D.N.Y.); *Peat v. City of New York*, No. 12-CV-8230 (S.D.N.Y.); *Gerskovich v. Iocco, City of New York*, No. 15-CV-7280 (S.D.N.Y.); *Packard v. City of New York*, No. 15-CV-7130 (S.D.N.Y.); *Nigro v. City of New York*, No. 19-CV-2369 (S.D.N.Y.). He is the former national chair of the Federal Bar Association Civil Rights Section (2016-2018); has organized and been a moderator and/or panelist on numerous civil rights CLE panels including—since 2017—organizing the biennial Civil Rights Etouffee (1-2 day CLE) in New Orleans; published a scholarly article on Qualified Immunity by the New York State Bar Association (2020) and a chapter on QI in a text book on Constitutional Policing by American Bar Association (2023); is an adjunct professor of law at Fordham University School of Law since 2018; and was the 2021 Sarah T. Hughes Civil Rights Award Honoree presented by the Federal Bar Association. Moore Decl. ¶ 20.

## THE PROPOSED PROCESS FOR NOTIFYING THE CLASS, RECEIVING CLAIM FORMS, AND DISTRIBUTING PAYMENTS TO ELIGIBLE CLASS MEMBERS IS FAIR AND REASONABLE

The Proposed Notices comply with due process and Fed. R. Civ. P. 23. The Class Notice that will be mailed to class members in two languages, English and Spanish, and the Class Notice

Summary that will be used in publishing notice also in those two languages, will contain all the information required by Rule 23(c)(2)(B). They describe the terms of the settlement, inform the class that Plaintiffs will seek to recover costs, attorneys' fees, and service/settlement awards from the City, and provide specific information regarding the date, time, and place of the final approval hearing. Moreover, the proposed class administration process involves establishing a website, where anyone can easily access the full settlement terms and the Class Notice, and class members can submit a claim form.

Courts have approved class notices even when they provided only general information about a settlement. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally"). The detailed information in the proposed Notices—and the easily accessibility of a detailed website—far exceeds this bare minimum and fully complies with the requirements of Rule 23 (c)(2)(B).

The Parties have agreed to a clear and comprehensive plan to send out notice to all class members, provide time for inquiries and claim submission, and pay out all timely legitimate claims. Agr. ¶ 36–39. Specifically, no more than 45 days after the Preliminary Approval Order is issued, the Claim Package will be mailed directly to all Class Members at their last known addresses. *Id.* ¶ 57. Notice will also be published in Spanish and English language newspapers. *Id.* ¶ 37. To receive a payment, class members must timely submit a Claim Form, either by mail or online, by the deadline set by the Court. *Id.* ¶ 61. Those members wishing to opt out of or object to the settlement will need to do so by the same deadline. *Id.* ¶ 71. With help from the Parties, the Claims Administrator will be responsible for determining who is eligible for payment and calculating class payments from an established Class Fund. *Id.* ¶ 51.

The Parties propose that Plaintiffs submit their motion for final approval by 14 days before

the Fairness Hearing and that the Fairness Hearing take place on a date convenient to the Court sometime after the administration of the claims. The Agreement proposes that the Claims Administrator will begin paying class members after the Final Approval Order, unless there is an appeal. *Id*. ¶ 47.

## THE PROPOSED CLAIMS ADMINISTRATOR IS ADEQUATE

The parties have agreed to retain Rust Consulting, Inc. to serve as the Claims Administrator. *Id*. ¶ 49. Rust has 30+ years of class action settlement administration experience and has administered more than 5,200 class action settlements, judgments, and similar administrative programs. Rust employs a permanent staff of more than 200. Rust has handled claims administration in matters in this district and involving the City of New York, including, but not limited to, *Stinson, et al. v. City of New York*, No. 10-CV-4228 (S.D.N.Y) (RWS), and the *Sierra-Wood* class action pending before this Court. Attached as Exhibit 2 to the Moore Declaration is a declaration from then-Senior Vice President of Rust Tiffaney Janowicz, filed in the *Stinson* case, explaining Rust's experience and services. The costs of Class Administration will be paid by the City of New York. *Id*. ¶ 45.

## CONCLUSION

Because the Proposed Settlement is fair and reasonable and serves the interests of the proposed Class, this Court should enter the proposed Stipulation of Settlement and Order and preliminarily approve the class settlement, conditionally certify the class, appoint Plaintiffs' Counsel as Class Counsel, approve the claims administration process, and approve the appointment of Rust as Claims Administrator.

Dated: July 19, 2023
New York, New York

**BELDOCK LEVINE & HOFFMAN LLP**

By:

Jonathan C. Moore
David B. Rankin
Luna Droubi
Marc Arena
Deema Azizi
Katherine "Q" Adams
Regina Powers
Keegan Stephan

99 Park Avenue, PH/26th Floor
New York, NY 10016
    t: 212-490-0400
    f: 212-277-5880
    e: jmoore@blhny.com
       drankin@blhny.com
       ldroubi@blhny.com
       marena@blhny.com
       dazizi@blhny.com
       qadams@blhny.com
       rpowers@blhny.com
       kstephan@blhny.com

**GIDEON ORION OLIVER**

277 Broadway, Suite 1501
New York, NY 10007
t: 718-783-3682
f: 646-349-2914
Gideon@GideonLaw.com

**COHEN&GREEN P.L.L.C.**

By:

Elena L. Cohen
J. Remy Green
Jessica Massimi

1639 Centre Street, Suite 216
Ridgewood (Queens), NY 11385
    t: (929) 888-9480
    f: (929) 888-9457
    e: elena@femmelaw.com
       remy@femmelaw.com
       jessica@femmelaw.com

**WYLIE STECKLOW PLLC**

By: Wylie Stecklow
Wylie Stecklow PLLC
Carnegie Hall Tower
152 W. 57th Street, 8th FLoor
NY NY10019
(t) 212 566 8000 x3
(f) 212 202 4952
Ecf@wylielaw.com

**LORD LAW GROUP PLLC**

Masai I. Lord
14 Wall St., Ste 1603
New York, NY 10005
P: 718-701-1002
E: lord@nycivilrights.nyc