UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X

ADAMA SOW, DAVID JAKLEVIC, ALEXANDRA DE MUCHA PINO, OSCAR RIOS, BARBARA ROSS, MATTHEW BREDDER, SABRINA ZURKUHLEN, MARIA SALAZAR, DARA PLUCHINO, and SAVITRI DURKEE, *on behalf of themselves and others similarly situated,*

                          Plaintiffs,

   - against -

CITY OF NEW YORK; MAYOR BILL DE BLASIO; NEW YORK CITY POLICE DEPARTMENT COMMISSIONER DERMOT SHEA; NEW YORK CITY POLICE DEPARTMENT CHIEF OF DEPARTMENT TERENCE MONAHAN; NYPD DETECTIVE EDWARD CARRASCO (SHIELD NO. 1567); NYPD OFFICER TALHA AHMAD (SHIELD NO. 21358); NYPD OFFICER KEVIN AGRO (SHIELD NO. 8054); and NYPD OFFICERS JOHN and JANE DOES # 1- 40,

                          Defendants.

------------------------------------------------------------------- X

No. 21-cv-00533 (CM)(GWG)

**DECLARATION OF ELENA L. COHEN IN SUPPORT OF UNOPPOSED MOTION FOR FINAL SETTLEMENT APPROVAL**

ELENA L. COHEN, an attorney duly admitted to practice before this Court, declares under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am a Partner at Cohen Green PLLC. The Court appointed my firm, Beldock Levine & Hoffman LLP, Gideon Orion Oliver, Esq., Wylie Stecklow PLLC, and Masai Lord, Esq. as Class Counsel in this case on July 27, 2023. (Dkt. No. 171 ¶ 13, amended by Dkt. Nos. 174, 176, 180 (referred to hereinafter collectively as the Court's "Preliminary Approval Orders")).

2. I am fully familiar with the facts of this case, and I submit this declaration in support of Plaintiffs' unopposed motion for (i) final approval of the settlement; (ii) final certification of the class for settlement purposes under Rule 23(b)(3); (iii) a determination that the notice to the

class was materially consistent with the Court's Preliminary Approval Orders; (iv) approval of the service awards to the Class Representatives; (v) approval of the settlements to non-Class Representative Plaintiffs; and (vi) approval of the settlement of Class Counsel's attorneys' fees and costs through June 15, 2023.

3. As explained more fully below, 987 claims were filed out of a total of 1,263 identified class members. The Claims Administrator received only 3 requests to opt out, 2 of which were for cases in suit prior to preliminary approval here that did not require an opt out. No objection was received by Class Counsel or the Claims Administrator, and we have received no notice that any objection was filed with the Court concerning any aspect of the settlement.

4. Out of the 1,263 identified class members, 15 were duplicates of the same person,[1] leaving 1,248 class members eligible to participate in this settlement. Out of the 1,248 eligible class members, 987 claims were filed—an extraordinary 79% response rate. The parties note that of the 1,248 eligible class members, 105 had already settled their claims.

I.  **Notice Was Given to the Class as Ordered by the Court**

5. In addition to retaining Rust Consulting, Inc. ("Rust Consulting") to serve as the Claims Administrator as directed by the Court, Class Counsel performed the following non-exhaustive list of tasks to notify the class of the proposed settlement.

6. One major task was determining the identity of the class members who were unknown to counsel. The Mass Arrest Processing Center ("MAPC") spreadsheets disclosed by the City in discovery included the names of 1,212 individuals who fit the eligibility criteria for each agreed-upon Protest Location in the Stipulation of Settlement. (Dkt. No. 176 ¶ 32).

---

[1] After compiling the list of eligible class members, the parties became aware that 9 class members had been arrested in 2 qualifying arrest locations. An additional 6 class members were included twice because of typos in NYPD paperwork or because of hyphenated surnames.

However, the New York Police Department Joint Operations Center data indicated that approximately 1,380 eligible arrests were made at the agreed-upon Protest Locations. Ultimately, Class Counsel were able to identify 54 of the unknown individuals.

7. Prior to Rust Consulting's mailing of claim packages to the 1,194 known potential claimants with a last known address on September 11, 2023, Class Counsel developed a robust outreach plan to locate and contact potential claimants and notify them of the settlement, and to internally track the ongoing progress of this outreach. This involved reviewing records obtained in discovery to extract apartment numbers, telephone numbers, and email addresses for each claimant where available, and adding this contact information to an internal outreach tracking spreadsheet. Extracting apartment numbers was especially important, since the MAPC records only noted the street address of nearly all class members and omitted apartment numbers.

8. Class Counsel conducted phone calls and sent individualized emails to potential claimants where such contact information was known, beginning shortly after the initial mailing by Rust Consulting. These calls and emails notified the potential claimants of their eligibility in the settlement, encouraged them to watch their mail for the Claim Packages, and advised them of their Claimant ID number and how to submit a claim via the Claims Website: www.NYC2020ProtestSettlement.com.

9. Class Counsel created separate website pages, in addition to the ones created by the Claims Administrator, showing maps of each eligible Protest Location and directing people with eligible claims to the Claims Website. These pages also included links to news media coverage of the settlement to increase the perceived legitimacy of the outreach effort, and helped the Search Engine Optimization of the Claims Website such that class members using search engines would be able to find the Claims Website

10. Class Counsel created a series of social media posts announcing the settlement, linking to the Claims Website, and showing maps of the eligible Protest Locations.

11. Class Counsel worked with social movement organizations in New York City to forward these posts to their constituencies.

12. Beginning on September 20, 2023, Rust Consulting regularly provided data extracts of claims received, including the Claimant ID and a Claim Number assigned to each claimant, along with the contact information supplied by the claimant when submitting the claim and the date and location of their eligible arrest. Nineteen subsequent data extracts were provided to all counsel (on September 29, October 9, October 17, October 30, November 7, November 13, November 20, November 27, December 4, December 11, December 18, and December 26, 2023, and January 2, January 4, January 8, January 15, January 18, January 20, and January 22, 2024). Class Counsel or their staff promptly updated the internal outreach tracking spreadsheet to reflect the current status of each known claimant.

13. Following each release of new claimant data, Class Counsel sent an email to each new claimant outlining the next steps and the anticipated timeline in the settlement, and provided a URL and social media graphic those claimants could use to distribute information about the settlement within their own networks, particularly to others who had been arrested at the same Protest Location. Through this communication with known claimants, Class Counsel were able to reach other known but unresponsive claimants, and to reach persons arrested in the same eligible Protest Locations who were thus far unknown to Class Counsel.

14. On November 13, 2023, Rust Consulting provided a list of updated addresses for 180 potential claimants whose claims packages had been returned. This updated data was promptly added to the Class internal outreach tracking spreadsheet.

15. This continuous updating of the Rust response data permitted Class Counsel to fine-tune the outreach strategy by determining which of the Protest Locations had low response rates and which neighborhoods in the City had relatively high densities of potential claimants who had not yet responded to the settlement. This information allowed Class Counsel to focus outreach efforts with greater precision, particularly where secondary contact information such as phone numbers and email addresses were available. Accordingly, Class Counsel and their staff printed postcards with information about the settlement, which were mailed to the addresses of unresponsive claimants within New York City; prepared a second outreach letter tailored to each individual unresponsive claimant in New York City for whom we lacked an email or phone number, which was sent on or about November 17, 2023; designed and printed 12" x 17" posters providing basic information about the settlement, including the Bar Date, with a QR code linking to additional information about the settlement including the Claims Website; distributed postcards and posters in businesses and meeting places in neighborhoods with high densities of unresponsive claimants; distributed postcards to activists at political gatherings and protests in late-November and December 2023; and continued emailing, phoning, and texting unresponsive known claimants through the end of the submission period.

16. In addition to the foregoing, Class Counsel searched public court records, social media sites, and online sources to locate and contact unresponsive potential claimants.

17. Where potential claimants were listed as "Homeless" in MAPC records, or where their listed address was a temporary shelter for homeless individuals, Class Counsel contacted the NYC Department of Homeless Services for guidance in locating and contacting those individuals for purposes of submitting a claim.

18. Where public records searches indicated that potential claimants are presently

incarcerated, Class Counsel took appropriate measures to establish contact with those individuals by conducting video conferences or making in-person attorney visits with each individual to alert them to the settlement and discuss the terms of the settlement. In total, claims were received from at least 8 incarcerated individuals.

19. Where public records searches indicated previous unrelated civil litigation involving the potential claimant, Class Counsel contacted the attorney listed for that litigation, requesting contact information or that their client be given Class Counsel's contact. Multiple potential claimants were contacted in this way and submitted claims thereafter.

20. Where online searches indicated that a potential claimant had died in the interval since their arrest, Class Counsel contacted the funeral homes listed for each deceased claimant and requested the next of kin be contacted by the funeral director and given Counsel's contact information. Through such outreach, at least three estate representatives submitted claims on behalf of their deceased children.

21. Class Counsel, as well as Class Representatives, contacted local racial justice organizing movements about the settlement and provided social media informational graphics for their use in amplifying the settlement among the communities of people who participated in those movements and may have been eligible to submit a claim. This resulted in substantial awareness of the settlement via credible sources within those communities, and a number of submissions from eligible claimants.

22. Some of this outreach generated claim inquiries from individuals whose arrest documentation could not be verified through the discovery material available to Class Counsel. For these potential claims, Class Counsel reviewed material provided from these individuals such as date-stamped photos, videos, social media posts, and private text messages, comparing

these with site images for the eligible Protest Locations obtained through Google Streetview to gauge the veracity of the asserted claim. Where the material submitted had a high degree of consistency with known facts of eligible Protest Locations, Class Counsel organized the material for review by the City. The same review process by Class Counsel also eliminated hundreds of ineligible claim inquiries.

23. Finally, in the three weeks prior to the extended Bar Date, Class Counsel and their staff made final outreach efforts to approximately 200 people for whom some additional mode of contact was available (including in Spanish when necessary), and sent overnight letters to approximately 40 people for whom only a mailing address was known. This generated a great deal of personal contact with claimants, many of whom were learning of the settlement for the first time. Class Counsel handled questions concerning the potential collateral consequences of settling claims, as well as questions concerning the settlement terms and the security and legitimacy of the Claims Website. As a result, a significant number of people submitted claims in the days and hours before the Bar Date.

24. During this outreach, Class Counsel received immensely positive feedback from class members in regards to the settlement amount.

25. The result of this robust outreach effort was the exceptionally high submission rate.

**II.    The Service Awards Are Fair and Reasonable**

26. The proposed service awards are fair and reasonable, and no objection was made to them.

27. Each of the named plaintiffs spent more than three years fighting to obtain fair compensation for the class.

28. Each Class Representative filed a Notice of Claim and sat for a 50-h examination by a lawyer representing the City.

29. Each worked with counsel to provide responses to the City's detailed discovery requests—which included providing releases for sealed records from their arrests and, for some of the named plaintiffs, providing releases for highly confidential medical records.

30. Each was deposed for several hours during the course of the litigation.

31. Each Class Representative kept in contact with Class Counsel about the progress of the litigation and asked to be informed about important developments and evidence uncovered in discovery.

32. Each assisted Class Counsel in negotiating the settlement here.

33. Several of the Class Representative assisted Class Counsel to broadcast the settlement so the greatest number of class members would learn about it and participate.

### III. The Agreed-Upon Payment of $5,850,000 to Class Counsel is Reasonable for Attorneys' Fees and Costs Incurred Through June 15, 2023

34. After extensive negotiations, the parties have agreed that the City will pay Class Counsel $5,850,000 for the reasonable attorneys' fees and costs incurred through June 15, 2023. The parties also agreed to negotiate Class Counsel's fees and costs incurred after June 15, 2023, at the conclusion of the case.

35. The agreed-upon fees and costs were negotiated at arm's length and only after the parties negotiated and reached agreement on the settlement stipulation, submitted it for and received preliminary approval from the Court, and notified the class of the proposed settlement.

36. To negotiate this payment, Class Counsel provided the City with over 1,500 pages of detailed, contemporaneous time records, which encompassed thousands of individual time

entries, totaling more than 9,000 hours of attorney time. The parties negotiated over several months before reaching agreement on the final amount.

37. The agreed-upon fees are approximately 30% less than the $8,284,543.17 upper limit that Class Counsel disclosed in the Class Notice. In the Class Notice, Class Counsel disclosed that they would seek up to $8,284,543.17 in fees and costs through June 15, 2023. (Dkt. 175-3 at VII.) No objection was filed concerning this amount of potential fees and costs.

38. The thousands of hours spent by Class Counsel litigating the claims in this case were reasonable and necessary to the litigation. The constitutional claims in this case were complex and difficult to prove. They included constitutional claims under 42 U.S.C. § 1983, including alleging *Monell* liability, as applied to a police operation that spanned months and thousands and arrests, across every borough of New York City.

39. Class Counsel largely successfully opposed a detailed motion to dismiss, including drafting an opposition specific to *Sow*, and briefed extensive discovery issues, across more than a hundred applications and related letters. Counsel prepared for and appeared at dozens of conferences before Magistrate Judge Gorenstein—some lasting for as long as four hours—to address these issues.

40. Class Counsel engaged and consulted with police practice experts to opine on the issues raised in the case.

41. Class Counsel prepared Plaintiffs for, and defended them in, depositions. Class Counsel led questioning on more than a dozen individual and 30(b)(6) depositions, as well as helping to prepare for and assist in questioning in over 100 depositions.

42. Class Counsel staffed the case in order to keep things moving and on track on the Court's "rocket docket" schedule, and coordinated extensively with the other consolidated cases,

including to ensure the single attorney permitted to speak at conferences could speak accurately on behalf of more than a dozen parties that attorney spoke for.

43. Class Counsel reviewed and marshalled hundreds of thousands of documents and thousands of hours of video, as discussed more fully below.

44. Class Counsel briefed the issue of union intervention at both the district and Circuit level.

45. The monetary class settlement here was the result of months of complex and frequent discussions with the City.

46. The consolidated cases involved at least 84 separate protest locations from May 28, 2020 through February 12, 2021, encompassing at least 3,500 arrests.

47. Class Counsel retained SITU Research, a visual investigations firm that synthesizes disparate forms of digital evidence to organize and review thousands of videos from protests.

48. Class Counsel was able to narrow the nearly 90 protests at issue to 18 protest locations.

49. After choosing the protest locations to be covered under this settlement, Class Counsel reviewed video and documentary evidence to delineate the boundaries of each of these 18 protest locations, and then to use the Mass Arrest Processing data to identify the eligible arrests within those locations.

50. Class counsel negotiated the additional terms of a memorandum of understanding, and prepared both the motion for preliminary approval, the Class Notice and the motion for final approval.

51. Class Counsel engaged in numerous discussions and conferences with the City to resolve issues of potential class member eligibility throughout the notice period.

52. Additionally, Class Counsel took a lead role in negotiating the injunctive settlement in this case, drafting proposed injunctive relief and participating in (and often leading) over 50 mediation sessions, which required significant drafting and legal research between sessions.

53. Counsel also incurred $126,559.67 in reasonable litigation costs through June 15, 2023.

54. Applying their reasonable hourly rates to their reasonable and necessary hours, Class Counsel's attorneys' fees and costs through June 15, 2023 totaled well over $8,284,543.17, the amount that Class Counsel disclosed in the Class Notice as the upper limit of fees and costs that Class Counsel would seek through June 15, 2023. Class Counsel ultimately agreed to the negotiated amount of $5,850,000 in order to submit a final approval motion to the Court which included resolution of the fees and costs through June 15, 2023.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: February 8, 2024
      New York, New York

_____
Elena L. Cohen