UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ADAMA SOW, DAVID JAKLEVIC, ALEXANDRA DE MUCHA PINO, OSCAR RIOS, BARBARA ROSS, MATTHEW BREDDER, SABRINA ZURKUHLEN, MARIA SALAZAR, DARA PLUCHINO, and SAVITRI DURKEE, *on behalf of themselves and others similarly situated,*

                            Plaintiffs,

- against -

CITY OF NEW YORK; MAYOR BILL DE BLASIO; NEW YORK CITY POLICE DEPARTMENT COMMISSIONER DERMOT SHEA; NEW YORK CITY POLICE DEPARTMENT CHIEF OF DEPARTMENT TERENCE MONAHAN; NYPD DETECTIVE EDWARD CARRASCO (SHIELD NO. 1567); NYPD OFFICER TALHA AHMAD (SHIELD NO. 21358); NYPD OFFICER KEVIN AGRO (SHIELD NO. 8054); and NYPD OFFICERS JOHN and JANE DOES # 1- 40,

                            Defendants.

21-cv-00533 (CM)(GWG)

**DECISION GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, FINAL CERTIFICATION OF THE SETTLEMENT CLASS, DETERMINATION THAT THE NOTICE TO THE CLASS WAS CONSISTENT WITH THE COURT'S PRELIMINARY APPROVAL ORDER, APPROVAL OF SERVICE AWARD PAYMENTS, AND APPROVAL OF CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS THROUGH JUNE 15, 2023**

Plaintiffs ADAMA SOW, DAVID JAKLEVIC, ALEXANDRA DE MUCHA PINO, OSCAR RIOS, BARBARA ROSS, MATTHEW BREDDER, SABRINA ZURKUHLEN, MARIA SALAZAR, DARA PLUCHINO, and SAVITRI DURKEE, on behalf of themselves and others similarly situated, seek final approval of the proposed class settlement that this Court preliminarily approved on July 27, 2023. Dkt. No. 171, amended by Dkt. Nos. 174, 176, 180

1

(referred to hereinafter collectively as the Court's "Preliminary Approval Orders"). The settlement amount agreed to by and between Plaintiffs and the City of New York—a Class Fund of $13,731,000.00—amounting to $9,950 to each of approximately 1,380 people who were arrested, or arrested and subjected to force, by the New York City Police Department ("NYPD") during the "George Floyd Protests" at 18 locations throughout New York City between May 28, 2020 and June 4, 2020, subject to certain exclusions. *See* Dkt. No. 171 at 7-10. The preliminarily approved proposed settlement also includes an additional service award of $9,950 for five of the Class Representatives, and a settlement of $21,500 to three Plaintiffs who were arrested at the June 4, 2020 protest in the Mott Haven neighborhood of the Bronx. *Id.* at 11-13. The preliminarily approved proposed settlement also includes individual settlements for Plaintiff Matthew Bredder, which includes his settlement under two other matters *Samira Sierra, et al. v. City of New York, et al.*, 20-CV-10291, 20 CV-10521 (CM)(GWG) and *Matthew Bredder v. City of New York*, 22-CV-04293 (VSB), in the amount of $41,400 and for Plaintiff Barbara Ross in the amount $30,000. *Id.* Finally, the proposed settlement includes payment of Class Counsel's attorneys' fees and costs separate from the class awards and individual settlements. *Id.* at 24.

To date, the response rate to the Class Notice has been incredibly positive considering the number of class members and the number of protest locations. Of the approximately 1,380 potential class members identified in the Preliminary Approval Orders, Class Counsel was able to definitively identify 1,263 class members, and 15 were duplicates of the same person,[1] leaving 1,248 class members eligible to participate in this settlement. Out of the 1248 eligible class members, 987 claims were filed—an extraordinary 79% response rate. The parties note that of the

---

[1] After compiling the list of eligible class members, the parties became aware that 9 class members had been arrested in 2 qualifying arrest locations. An additional 6 class members were included twice because of typos in NYPD paperwork or because of hyphenated surnames.

2

1,248 eligible class members, 105 had already settled their claims. *See* Declaration of Elena L. Cohen in Support of Unopposed Motion for Final Settlement ("Cohen Decl.") ¶¶ 3-4; Declaration of Milan Mader ("Rust Decl.") ¶¶ 15-17.

Since the Preliminary Approval Orders, the Parties have also agreed on the payment of $5,850,000.00 for Class Counsel's fees and costs through June 15, 2023 (the date included on the Class Notice). Cohen Decl. ¶ 35. The agreed-upon fees and costs were negotiated at arm's length and only after the parties negotiated and reached agreement on the settlement stipulation, submitted it for and received preliminary approval from the Court, and notified the class of the proposed settlement. *Id.* ¶ 36. Class Counsel provided the City with detailed contemporaneous time records of over 1,500 pages which encompassed thousands of individual time entries, totaling more than 9,000 hours of attorney and paralegal time. *Id.* ¶ 37. The agreed-upon fees are approximately 30% less than the $8,284,543.17 million upper limit that Class Counsel disclosed in the Class Notice, to which there were no objections. *Id.* ¶ 38. The parties also agreed to negotiate Class Counsel's fees and costs incurred after June 15, 2023, at the conclusion of the case. *Id.* ¶ 35.

Plaintiffs now request that the Court issue an order: (i) granting final approval of the preliminarily approved settlement; (ii) certifying the class for settlement purposes under Rule 23(b)(3); (iii) finding that the notice to the class was adequate and materially consistent with the Court's Preliminary Approval Orders; (iv) approving the service awards to the Class Representatives; (v) approving the settlements to Plaintiffs Pluchino, Durkee, Sow, Bredder and Ross; and (vi) approving the Parties' agreement of $5,850,000.00 for the payment of Class Counsel's fees and costs through June 15, 2023 (the date included on the Class Notice).

The Court finds that final approval is appropriate because: the settlement is fair, reasonable and adequate—and therefore, complies with Rule 23(e); the Parties complied with the Preliminary

Approval Orders and provided adequate notice to the class—and the response was substantial; the service awards are fair and reasonable; the individual settlements are fair and reasonable; and the negotiated attorneys' fees and costs are fair and reasonable.

## DISCUSSION

### I. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

The *Sow* settlement is "fair, reasonable, and adequate" under Federal Rule of Civil Procedure 23(e)(2). *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) ("The central question raised by the proposed settlement of a class action is whether the compromise is fair, reasonable and adequate."). Plaintiffs' memorandum of law in support of preliminary approval, Dkt. No. 166, applied the *Grinnell* factors to the proposed settlement and for the reasons argued therein, those factors all weigh in favor of approving the class settlement. *See id.* at 9-15.

The one *Grinnell* factor for which Plaintiffs provide further support herein is "the reaction of the class to the settlement." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (*abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)). "'It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.'" *Stinson v. City of New York*, 256 F. Supp. 3d 283, 289 (S.D.N.Y. 2017) (quoting *In re Bear Stearns Companies, Inc. Sec., Derivative, & BRISA Litig.*, 909 F. Supp. 2d 259, 266 (S.D.N.Y. 2012)). Even "[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Pearlstein v. Blackberry Ltd.*, 2022 U.S. Dist. LEXIS 177786, at *10 (S.D.N.Y. Sep. 29, 2022) (*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 118 (2d Cir. 2005). "The fact that the vast majority of class members neither objected to nor opted out is a strong indication of fairness." *Hernandez*

4

*v. Immortal Rise, Inc.*, 306 F.R.D. 91, 100 (E.D.N.Y. 2015) (citing *Wright v. Stern*, 553 F. Supp. 2d 337, 343-345 (S.D.N.Y. 2008)).

Class Counsel received only three requests to opt out, two of which were for cases in suit prior to preliminary approval here that did not require an opt out, *see* Cohen Decl. ¶ 3. The positive response rate received in this case is substantially above the average for class action cases. *See Hernandez*, 306 F.R.D. at 100 (noting that a 20% participation rate "is well above average in class action settlements") (citing *McLaughlin* on Class Actions § 6:24 (8th ed.) ("Claims-made settlements typically have a participation rate in the 10-15 percent range.")); *Acevedo v. Workfit Med. LLC*, 187 F. Supp. 3d 370 (W.D.N.Y. 2016) (approving settlement with 21% participation rate and noting the "high participation rate for a 'claims made' settlement," which "regularly yield response rates of 10 percent or less"); *see also Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) (en banc) (claims rates in class action settlements "rarely" exceed 7%, "even with the most extensive notice campaigns"); *Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d 34, 52 (D. Me. 2005) ("'claims made' settlements regularly yield response rates of 10 percent or less").

Accordingly, and for the reasons explained in Plaintiffs' memorandum of law in support of preliminary approval, the Court grants final approval because the settlement is fair, reasonable, and adequate.

## II.    COMPLIANCE WITH THE PRELIMINARY APPROVAL ORDER

The Parties complied with the class notification requirements of the Preliminary Approval Orders. The Parties undertook the laborious and time intensive task of notifying as many of the members of the class as possible using various methods including by email, mail, and publication. The class—defined as "all persons who were arrested, or arrested and subjected to force, by NYPD officers during the 'George Floyd protests' at [18 dates and locations] . . ."—consisted of

5

approximately 1,380 individuals. Class Counsel analyzed and reconciled discovery disclosed by the City to identify 54 individuals who were previously unknown. Cohen Decl. ¶ 6. While the Parties had lists of approximately 1,380 class members who had been identified through various NYPD records of arrests provided in discovery, additional individuals would come to be identified through their response to the Class Notice, *see* Dkt. No. 170-1 and -2, and agreement among the Parties as to their eligibility. *See* Cohen Decl. ¶¶ 6-26 (explaining, in detail, the process of identifying eligible class members). Class Counsel's considerable efforts to publicize the settlement and identify and contact potential class members identified additional people whom Class Counsel believe are class members and who have filed claim forms.

A. **The Parties Provided Adequate Notice**

The Parties retained, and the Court approved, Rust Consulting, Inc. to serve as the Claims Administrator as proposed in the Settlement Stipulation. *See* Dkt. No. 176 at 50. Rust has complied with all terms of Paragraph 51 of Preliminary Approval Orders.

As part of the Claims process, Rust placed advertisements of the summary Class Notice in *The Daily News*, *the Amsterdam News*, and *El Diario*, which were run in English and Spanish, three times within the same three-week period beginning on September 14, 2023. Rust Decl. ¶ 9. In addition, some of the Class Representatives and Class Counsel also gave interviews to the press to ensure that word of the settlement would spread through the community, leading to coverage in *The New York Times*, the *Washington Post*, the *New York Post*, the *New York Daily News*, *Rolling Stone*, *Democracy Now*, and *Gothamist*, among other publications, as well as local television news (ABC, CBS, and NBC). Cohen Decl. ¶¶ 10-11, 21.

On September 11, 2023, Rust launched a website www.nyc2020protestsettlement.com that described the preliminarily approved settlement. Rust Decl. ¶¶ 10-11. The website included a page

6

to download the Amended Stipulation of Settlement and Order, Long Form Class Notice (in both English and Spanish), Protest Area Map, and Short Form Notice. *Id*. The website also has an FAQ section to answer common questions about the lawsuit and settlement and allowed Class Members to submit a claim (using their unique Claim ID number). *Id*. There was also a "Did Not Receive a Claim Form" on the website that described how people could identify themselves as potential members of the class and request a Claim ID number. *Id*. The website also provided an email address which was accessible to the Claims Administrator, Class Counsel and Counsel for Defendants so that potential class members and class members could provide supporting documentation if there were questions as to their eligibility. *Id*.

Class Counsel conducted further efforts to notify potential class members of the proposed settlement. This included posting announcements about the settlement on social media platforms, Cohen Decl. ¶ 10, and working with social movement organizations to post similar messages on their social media accounts. *Id*. ¶ 11. Class Counsel also searched public records, social media sites, and online sources to locate and contact missing class members. *Id*. ¶ 16. Class Counsel and their staff printed postcards with information about the settlement, which were mailed to the addresses of unresponsive claimants within New York City; prepared a second outreach letter tailored to each individual unresponsive claimant in New York City for whom they lacked an email or phone number, which was sent on or about November 17, 2023; designed and printed 12" x 17" posters providing basic information about the settlement, including the Bar Date, with a QR code linking to additional information about the settlement including the Claims Website; distributed postcards and posters in businesses and meeting places in neighborhoods with high densities of unresponsive claimants; distributed postcards to activists at political gatherings and protests in

7

late-November and December 2023; and continued emailing, phoning, and texting unresponsive known claimants through the end of the submission period. *Id.* ¶ 15.

### B.  The Parties Identified and Coordinated with Class Members

The process for handling inquiries submitted as outlined on the website worked smoothly with the cooperation of the Claims Administration, the New York City Law Department, and Class Counsel. As of January 28, 2024, Rust Consulting has received 25,215 visits to the website. Rust Decl. ¶ 11. Beginning on September 20, 2023, Rust Consulting regularly provided data extracts of claims received, including the Claimant ID and a Claim Number assigned to each claimant, along with the contact information supplied by the claimant when submitting the claim and the date and location of their eligible arrest. Cohen Decl. ¶ 12. Inquiries and requests for participation in the settlement were automatically routed to email accounts established for Class Counsel and the New York City Law Department. Rust Decl ¶ 12. Class Counsel responded to each submission. Cohen Decl. *Id.* ¶ 22-23. Many of the inquiries were from individuals who were not arrested and were thus not class members. Many inquiries were submitted regarding the protest locations. *Id.* Class Counsel and the New York City Law Department communicated regularly to determine respective positions on the eligibility of potential Class Members. The process overall resulted in nearly 1,000 class members filing claims, including more than 54 previously unknown class members who were identified and provided Claim IDs. *Id.* ¶ 6.

Class Counsel followed a defined procedure to assess the eligibility of each newly-identified class member who submitted an inquiry through Rust or contacted Class Counsel directly. *Id.* ¶ 22. For each such inquiry, Class Counsel first requested the putative class member send any available documentary evidence that supported their claim (*e.g.*, photographs or videos

8

taken at the protests, summonses, Desk Appearance Tickets, etc.) and a copy of their photo ID. Class Counsel confirmed with the New York City Law Department as to their eligibility. *Id.*

Through that process, Class Counsel identified people who had not been arrested, and people who were arrested but whose location of arrest was outside the area specified by the Protest Maps and/or not on the covered dates. In assessing each putative class member, Class Counsel carefully considered these descriptions, any documentary evidence they submitted, and, in some cases, the corroborating statements of other known class members. When a new class member was identified and Class Counsel confirmed with the New York City Law Department as to their eligibility, Class Counsel requested that Rust Consulting assign a Claim ID number and Class Counsel then provided that number to the class member so they could submit a claim. Through this process, Class Counsel identified hundreds of people who were not given Claim ID numbers because they did not meet the class definition or were excluded based on ¶ 33 of the Amended Stipulation of Settlement. *Id.* ¶ 22.

Pursuant to the terms of the Amended Stipulation of Settlement, ¶ 66, the City exercised its right to question the eligibility of certain putative class members identified through this process. Cohen Decl. ¶ 22. In those cases, Class Counsel provided additional information if necessary—in some cases, going back to the claimants to request further evidence. *Id.* The Parties met and conferred numerous times about the disputed claims, and reached agreement to include 54 class members not included in the initial Eligible Class List. *Id.* ¶ 6.

### C. Notice to the Class Was Adequate

The process described above was more than adequate to provide notice that complies with due process. *See, e.g., Stinson*, 256 F. Supp. 3d at 290 ("notice by mail sent to the last known address of the absent class member meets the due process requirement of notice through reasonable

9

effort") (cleaned up). In addition to mailing the Class Notice to the last known address of every identified class member, the summary Class Notice was published for three consecutive weeks in Spanish and English language newspapers Rust Decl. ¶ 9, a publicly accessible website was set up (available in English and Spanish), Class Counsel posted about the settlement on social media Cohen Decl. ¶ 10, and Class Counsel and Class Representatives gave television and news interviews relating to the settlement. All of these efforts satisfy due process.

### III. THE PROPOSED SERVICE AWARDS ARE APPROPRIATE

The preliminarily approved service awards of $9,950 for Class Representatives Jaklevic, de Mucha Pino, Rios, Zurkuhlen, and Salazar, in addition to the claim award they receive as class members, are appropriate. In the Second Circuit "a successful Class action plaintiff, may, in addition to his or her allocable share of the ultimate recovery, apply for and, in the discretion of the Court, receive an additional award, termed an incentive award." *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997).

The proposed service awards are reasonable. First, the service award amount of $9,950 was included in the Class Notice and there was no objection made to this figure. *See Sierra v. City of N.Y.*, No. 20-CV-10291 (CM)(GWG), 2023 U.S. Dist. LEXIS 191677, at *16 (S.D.N.Y. Oct. 25, 2023) ("The proposed service awards of $21,500 for each of the five Class Representatives, in addition to the claim award they receive as class members, are appropriate.") Each of the named plaintiffs spent years fighting to obtain fair compensation for the class. Cohen Decl. ¶ 27. Each Class Representative filed a Notice of Claim and sat for a 50-h examination by a lawyer representing the City. *Id.* ¶ 28. Each worked with counsel to provide responses to the City's detailed discovery requests—which included providing releases for sealed records from their arrests and, for some of the named plaintiffs, providing releases for highly-confidential medical

10

records. *Id.* ¶ 29. Each was deposed for several hours during the course of the litigation. *Id.* ¶ 30. Each Class Representative kept in contact with Class Counsel about the progress of the litigation and asked to be informed about important developments and evidence uncovered in discovery. *Id.* ¶ 31. Each assisted counsel in negotiating the settlement here. *Id.* ¶ 32. And several of the Class Representative assisted Class Counsel to broadcast the settlement so the greatest number of class members would learn about it and participate. Several also gave interviews with the press following the settlement announcement. *Id.* ¶ 33. These efforts justify the proposed service awards.

Courts in this circuit have approved similar and significantly higher service awards for class representatives. *See e.g.*, *Wright*, 553 F. Supp. 2d at 345 (approving $50,000 service awards); *McBean v. City of New York*, 233 F.R.D. 377, 391 (S.D.N.Y. 2006) (noting that service awards in the amounts of $25,000 and $35,000 "fall solidly in the middle of the range" of "incentive awards given generally to named plaintiffs across a variety of class actions"); *Roberts*, 979 F. Supp. at 202-05 (awarding upward of $85,000 in service awards).

Accordingly, the Court approves the payment of $9,950 to Class Representatives Jaklevic, de Mucha Pino, Rios, Zurkuhlen, and Salazar's service awards, separate and apart from the awards they will receive as class members.

## IV. THE NON-CLASS REPRESENTATIVE SETTLEMENTS ARE REASONABLE

Pursuant to ¶ 42 of the Stipulation of Settlement, Plaintiffs Sow, Pluchino and Durkee settled their claims for $21,500. In consideration for that amount, Plaintiffs Sow, Pluchino and Durkee agreed not to submit a claim in the *Sierra, et al. v. City of New York, et al.* No. 20-cv-10291 (CM) action. Pursuant to ¶ 43 of the Stipulation of Settlement, Plaintiff Matthew Bredder settled his claims for $41,400.00. Dkt. No 176. In consideration for that amount, Plaintiff Bredder agreed not to submit a claim form in this action, nor in the *Sierra, et al. v. City of New York, et al.*

action, and agreed to voluntarily dismiss, with prejudice, *Matthew Bredder v. City of New York*, 22 Civ. 04293 (VSB). *Id*. Pursuant to ¶ 44 of the Stipulation of Settlement, Plaintiff Barbara Ross settled her claims for $30,000.00 and agreed not to submit a claim form in this action. *Id*. These settlements were negotiated at arm's length and are approved.

## V. THE COURT APPROVES THE AGREED-UPON PAYMENT OF ATTORNEYS' FEES AND COSTS INCURRED THROUGH JUNE 15, 2023

The Court approves the Parties' agreement that the City will pay Class Counsel $5,850,000.00 for their reasonable fees and costs incurred through June 15, 2023 (the date listed on the Class Notice).[2] In a common fund, which this case is not, "the six factors laid out by the Second Circuit in *Goldberger* are applicable to the court's reasonableness determination whether a percentage-of-fund or lodestar approach is used. The factors are: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Stinson*, 256 F. Supp. 3d at 295 (quoting *Goldberger v. Integrated Res.*, 209 F.3d 43, 50 (2d Cir. 2000) (internal quotations and citations omitted). "If money paid to the attorneys comes from a common fund, and is therefore money taken from the class, then the Court must carefully review the award to protect the interests of the absent class members." *McBean*, 233 F.R.D. at 392.

Because the attorneys' fees and costs in this case are not paid from a common fund, *i.e.*, the "money paid to the attorneys is entirely independent of money awarded to the class," as opposed to a common fund case, "the Court's fiduciary role in overseeing the award is greatly

---

[2] The Parties have agreed to negotiate Class Counsel's fees and costs incurred after June 15, 2023, at the conclusion of the case. Cohen Decl. ¶ 35. The parties will attempt to resolve the post-June 15, 2023 fees and costs, but if agreement proves impossible, then by a petition to the Court. Courts have previously approved similar procedures. *See, e.g., McBean*, 233 F.R.D. at 392.

reduced, because there is no conflict of interest between attorneys and class members." *McBean*, 233 F.R.D. at 392; *accord Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 243 (E.D.N.Y. 2010). Moreover, "[t]he negotiation of fee agreements is generally encouraged." *In re Sony SXRD Rear Projection TV Class Action Litig*, 2008 U.S. Dist. LEXIS 36093, at *43-44 (S.D.N.Y. May 1, 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

Several of the *Sony* factors support a finding that the agreed-upon attorneys' fees are reasonable here. "First, the fee was negotiated only after agreement had been reached on the substantive terms of the Settlement benefiting the class." *In re Sony*, U.S. Dist. LEXIS 36093, at *44. Indeed, the fee here was negotiated only after the Parties negotiated the terms of the settlement stipulation, submitted it for and received preliminary approval, and notified the class of the proposed settlement. The reason for this was simple: Class Counsel did not want to delay any aspect of this settlement to address their fees and costs. "This tends to eliminate any danger of the amount of attorneys' fees affecting the amount of the class recovery." *Id.*

"Second, the attorneys' fees were negotiated at arm's length." *Id.* Class Counsel provided the City with detailed contemporaneous time records that spanned hundreds of pages and encompassed thousands of individual time entries, totaling well over 9,000 hours of attorney time. Cohen Decl. ¶ 37. The Parties negotiated over several months and the amount ultimately agreed upon reflects a fair, arm's length negotiation. *Id.*

"[T]hird, none of the objections to the Settlement took issue with the requested fee award." *Id.* Indeed, no objection was received to any aspect of the settlement. Cohen Decl. ¶ 37.

Fourth, "the reasonableness of the requested fee award can be tested by using the lodestar method of calculating reasonable attorneys' fees in common fund cases." *In re Sony*, U.S. Dist. LEXIS 36093 at *45. Class Counsel documented in contemporaneous time records 9,000 hours

13

of attorney time before June 15, 2023.³ Cohen Decl. ¶ 36. The Court finds that those hours were reasonable and necessary to successfully litigate this case. The constitutional claims in this case were complex and difficult to prove. They included constitutional claims under 42 U.S.C. § 1983, alleged *Monell* liability, and encompassed allegations spanning dozens of protests over the course of months across New York City. Litigating the violations of various constitutional rights resulting from multiple police operations in response to dozens of protests over the course of months was a significant challenge. *Id.* ¶ 38. Class Counsel coordinated with their ten clients and defended their depositions; drafted detailed complaints, independently opposed a motion to dismiss on the consolidated cases (which was defeated on the vast majority of claims in this matter). *Id.* ¶ 39. prepared for and questioned witnesses in over 100 depositions; briefed extensive discovery issues, across more than a hundred applications and related letters. Counsel prepared for and appeared at dozens of conferences before the Honorable Gabriel Gorenstein,—a few lasting for as long as four hours—to address these issues. *Id.* ¶ 41. Class Counsel reviewed thousands of hours of video and audio footage from the nearly 100 protests at issue in the Consolidated Cases and covered by the allegation in the Sow pleadings. Class Counsel engaged SITU Research to organize and review thousands of videos from the protests. *Id.* ¶ 47. Class Counsel prepared for and engaged in intensive, successful settlement negotiations with the City. *Id.* ¶ 45. Counsel also incurred $126,559.67 in costs through June 15, 2023. Cohen Decl. ¶ 53.

Finally, while this is not a common fund settlement and the award of fees does not affect class members' recovery, it bears noting that Class Counsel's requested fees and expenses are

---

³ Given the confidential nature of such records, which contain descriptions that may reveal attorney-client and work-product privileges, Class Counsel has not attached these records to their supporting declaration. However, should the Court request them, Counsel is prepared to submit those records for in camera review.

broadly consistent with fees deemed reasonable in common fund cases. Here, the total settlement payout, including class payments,[4] service awards, individual settlements of Plaintiffs Sow, Durkee, Pluchino, Bredder and Ross, and attorneys' fees through June 15, 2023, will be approximately $15,565,500.00. Class Counsel's request of fees and expenses for work performed through June 15, 2023 is $5,850,000.00. And while this case is not a common fund settlement, this number is well within the range of reasonableness, even for common fund settlements. *See, e.g., Guippone v. BH S & B Holdings, LLC*, No. 09-CV-01029, 2011 WL 5148650, at *8 (S.D.N.Y. Oct. 28, 2011) (McMahon, J.) ("In the Second Circuit, the trend is to use the percentage-of-recovery method for class counsel fee awards in common fund cases, and one-third has been held to be a 'fair and appropriate award.'"); *Febus v. Guardian First Funding Grp.*, LLC, 870 F. Supp. 2d 337, 340-41 (S.D.N.Y. 2012) (awarding one-third of common fund as fee to class counsel). Accordingly, the Court approves the Parties' negotiated payment of $5,850,000.00 for Class Counsel's fees and costs incurred through June 15, 2023.

## CONCLUSION

Because the Settlement is fair and reasonable and the Class has overwhelmingly supported this Settlement, this Court grants final approval to the settlement, certifies the class for settlement purposes under Rule 23(b)(3), finds that the notice to the class was adequate and consistent with the Court's Preliminary Approval Orders, approves the service awards for the Class Representatives, approves the individual settlements for Plaintiffs Sow, Durkee, Pluchino, Bredder and Ross, and approves the interim payment of attorneys' fees and costs for work performed through June 15, 2023.

---

[4] Pursuant to Paragraph 67 of the Amended Stipulation, awards to eligible Class Members may be reduced by any amounts owed due to New York child support liens and Department of Finance liens.

Dated: March 5, 2024

_____
U.S.D.J.

BY ECF TO ALL COUNSEL